539 So.2d 712 (1989)
Cynthia G. LEMOINE, Plaintiff-Appellant,
v.
AERO-MIST, INC., et al., Defendants-Appellees.
No. 87-1145.
Court of Appeal of Louisiana, Third Circuit.
February 8, 1989.
*713 Knoll, Roy & Spruill, J. Eddie Knoll, Marksville, for plaintiff/appellant.
Michael Johnson, Marksville, Percy, Smith, Foote & Honeycutt, P.C., Erin P. Moriarty/Steven Graalmann, Alexandria, Melancon & Rabalais, Rodney M. Rabalais, Marksville, for defendants/appellees.
Before FORET, YELVERTON and KING, JJ.
FORET, Judge.
Plaintiff, Cynthia G. Lemoine, filed suit against defendants, seeking damages for injuries she sustained allegedly as a result of an allergic reaction to an insecticide which was demonstrated in the office where she worked. Defendants include Lucy Barnes and Nora Berry, salespersons; Oliver Netherton, d/b/a Louisiana Power Line Products, their employer; A.C. Fellers Corporation, the distributor, and its insurer, Reliance Insurance Company; together with AMREP, the manufacturer.
After trial on the merits, the trial court found in favor of all defendants and dismissed Lemoine's demands. Plaintiff appeals, urging that the trial court erred in absolving the defendants, Berry, Barnes, Netherton, and Fellers from liability. Plaintiff does not appeal the trial court's dismissal of the manufacturer, AMREP.
After reviewing the trial record and appellate briefs, we find no error in law or manifest error in fact and, as such, affirm the judgment of the trial court.
The trial court wrote a thorough opinion, which sets forth the facts as follows:

FACTS
"CYNTHIA G. LEMOINE (LEMOINE) was employed as an attorney's secretary on September 25, 1984. She was returning with lunch for herself and her employer. She entered the waiting room and began coughing and experienced extreme difficulty in breathing to the extent that those present took her to Dr. L.J. Mayeux for treatment.
"She returned to the office and then to her home, being unable to continue work, and from that time and several days thereafter ran fever, broke out in whelps and splotches, was swollen around the eyes, her nose was congested, she experienced difficulty in breathing and swallowing and itched constantly. These symptoms recurred from time to time thereafter.
"Lemoine was treated by two general practitioners, physicians, and was finally referred to Dr. Hensel, an allergist, Dr. Hensel found her to be allergic to many foods and substances, including baker's yeast, onions, cottage cheese, shrimp, cottonseed products, cabbage, grapefruit, and in the atmosphere, house dust, animal dander, feathers and similar substances.
"She undergoes constant treatment. She has to be injected twice each week and take regular medication. Even so, she experiences flare ups of the condition. She is able to work, but must be extremely careful.
"Immediately prior to Lemoine's return to her office on September 25, 1984, Nora Berry and Lucy Barnes, salespersons for Louisiana Powerline Products (Netherton) were demonstrating products being sold by Netherton office to office. Barnes had sprayed a product called `Bug Off' which had been manufactured by AMREP packaged under pressure in an aerosol can, sold by AMREP to A.C. Fellers Corporation (Fellers), a distributor of many products under the trade name `Powerline'.
"`Bug Off' contained a chemical `pyrethrine' which is in common use in the manufacture of similar products. The can contained the warning `may be harmful if swallowed, inhaled or absorbed through the skin'.
"Barnes had sprayed the chemical, unsolicited, in the office to demonstrate *714 how to kill a cricket. Berry did nothing but attempted to sell. They testified that, as instructed by a sales representative and trainer of Fellers, Barnes sprayed it into the top of the can and gave it to a co-employee of Lemoine to smell. At any rate, the substance had been sprayed in the office immediately prior to Lemoine's arrival.
"It is the uncontested opinion of the medical experts that the probable cause of Lemoine's subsequent problems, was the reaction on that day to the chemical, pyretherine, which triggered a latent genetic propensity to allergic reactions experienced thereafter. Given the fact that she had experienced no problems prior to the incident of September 25, 1984, and the other facts presented, the Court finds and holds this to be the case.
"AMREP (formerly Aero-Mist, Inc.) is the manufacturer of the product. AMREP also labeled the can with the label designed and submitted by A.C. Fellers Company, having the trademark and logo `Power Line'.
"Fellers (Power Line) purchased the product from AMREP, fully labeled, and containing the warning on the can referred to above.
"Fellers was the distributor under a system of distribution which worked as follows. Fellers distributed many products under the trade name `Powerline'. A local independent distributor would be obtained by Fellers and assigned exclusive territory. In the present case, the distributor was Netherton who assumed the trade name `Louisiana Power Line'. By the terms of the contract between Fellers and Netherton, Netherton agreed to purchase a stated amount of Powerline products over a period of five years, the penalty for failing to purchase the required progressive amounts being the forfeiture of the contract. Netherton was assigned an exclusive territory in the State of Louisiana wherein no other person was permitted to sell Powerline Products. Netherton was not permitted to sell any other products, but had been given the verbal assurance that permission would be granted to sell non competing products. Fellers furnished its personnel to train salespersons employed by Netherton. Fellers furnished Netherton with sales invoices and materials containing the Powerline logo, and furnished brochures and other sales materials.
"Pursuant to this arrangement, Netherton employed sales persons for door to door sales, and particularly employed Barnes and Berry. Craig Johnson, a representative of Fellers conducted training courses for Netherton's employees, including Berry and Barnes.
"It may be significant that Feller's representative, Johnson, advised Berry and Barnes to spray the Bug Off into the cap of the can for customers to sniff, to show the pleasant odor."

LIABILITY
Lemoine contends that the defendants are liable under both La.C.C. art. 2315 and La.C.C. art. 2317, which state, in pertinent part, as follows:
C.C. art. 2315: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."
C.C. art. 2317: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."
The alleged liability of Netherton, the employer of Barnes and Berry, and Fellers, the distributor, is dependent upon a finding of negligence on behalf of Barnes and Berry. The trial court spoke to this issue correctly, and we adopt its reasons, in pertinent part, as follows:
"[T]he objectionable substance was such as would cause an allergic reaction in extremely few cases. Dr. Hensel testified that this was his first experience in the treatment of over 30000 allergic patients. When you consider that this was one of 30000 seen by him professionally, taken with the many persons who had not seen him, the reaction in the present case is extremely rare.

*715 "Notwithstanding the remoteness of the possibility of such reaction, AMREP did in fact adequately give warning on the can of Bug Off.
"The Court in the Thomas Case [Thomas v. Gillette Company, 230 So2d 870 (La.App. 3 Cir.1970), writ refused, [255 La. 809], 233 So2d 249 (1970)] held that the use of a chemical in the manufacture of a product which chemical causes an allergic reaction is not a vice or defect in the product, following Moran v. Insurance Company of North America, 146 So2d 4 [(La.App. 4 Cir. 1962)]. Likewise, in Booker v. Revlon Realistic Prof. Products, 433 So2d 407 [(La.App. 4 Cir.1983)], the Fourth Circuit held there was not even a requirement for a warning against the possibility of an unusual or rare idiosyncratic sensitivity on plaintiff's part. To the same effect is Bish v. Employers Liability Assurance Corporation, 236 F2d 62, [5th Cir.1956], by which this Court is not necessarily bound, but which contains reasoning to support this opinion.
. . . .
"From the foregoing, the Court must find that the product, Bug Off, was not defective. It is one of a multitude of products on the market containing the same chemicals.
"Mrs. Barnes sprayed this product on a cricket and into the cap of the can in an office. This is the same product and kind of product which is sprayed in homes and offices many times daily without serious effects. Mrs. Lemoine was not present when it was sprayed but arrived after the incident. A large quantity was not used.
"The test of liability in the present case is `Did Mrs. Barnes act in any but a reasonable and prudent manner?' The answer is that she did not act unreasonably. If a person acts as an ordinary and reasonable prudent person he cannot be found to be negligent. Tyson v. American Indemnity Company, 411 So2d 498 [(La.App. 1 Cir.1982), writ denied, 413 So2d 505 (La.1982) ]. If we were to find Mrs. Barnes negligent, we would be obliged to hold that any person who uses the various insecticides in the presence of other persons (and even in his own presence) is negligence [sic]. Reasonable and prudent persons use these chemicals in many places and with great frequency. In view of the rare susceptibility to this chemical by the plaintiff, it was not reasonably foreseeable that she or anyone else would have been injured. Ray v. Ameri-Care Hospital, 400 So2d 1127 [(La.App. 1 Cir.1981), writ denied, 404 So.2d 277 (La.1981)]." See also, Spurlock v. Cosmair, Inc., 509 So2d 826 (La. App. 1 Cir.1987) (The mere occurrence of an unusual event is not in and of itself proof of a defective hair product.)
Insofar as we agree with the reasoning of the trial court in finding no negligence on behalf of Mrs. Barnes, plaintiff's contentions as to the liability of Berry, Netherton, and Fellers also fail.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are taxed to plaintiff, Cynthia G. Lemoine.
AFFIRMED.